UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00182-MOC-DSC

| | | |
|---|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY**, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| **JOHN J GELSHENEN JR.** **DAVIS & GELSHENEN, LLP**, | ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Hartford's Motion for Judgment on the Pleadings. Having considered Hartford's motion and reviewed the pleadings, the Court will grant the motion and dismiss this action.

**I.**     **Background**

    **A. The Underlying Action**

In 2016, Defendants Davis & Gelshenen, LLP and John J. Gelshenen, Jr. (collectively, "Gelshenen"), a personal injury lawyer and firm, were named as defendants in a single-count putative class-action lawsuit, Hatch v. Demayo, No. 1:16-CV-925, 2017 WL 4357447, at *1 (M.D.N.C. Sept. 29, 2017) (the "Underlying Action"). The plaintiffs, drivers who had been involved in automobile accidents in North Carolina, alleged that the defendants, including Gelshenen, violated the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721–2725 (2012), by obtaining plaintiffs' names and addresses from copies of official accident reports maintained by the State of North Carolina and using that information to mail legal advertisements

to plaintiffs.[1]

### B. The Present Action

Gelshenen tendered defense of the Underlying Action to Plaintiff Hartford Casualty Insurance Company ("Hartford") under a series of business liability insurance policies (the "Policies")[2] that Gelshenen purchased from Hartford. The Policies generally provide that Hartford would defend and indemnify Gelshenen against damages for personal and advertising injuries that Gelshenen became legally obligated to pay. Hartford denies that it owes Gelshenen any duty to defend or indemnify the Underlying Action because the DPPA claim asserted in that action falls under two different exclusionary provisions in the Policies.

The first provision excludes coverage for personal and advertising injury arising out of the violation of a right of privacy created by a federal statute, such as the DPPA (the "Privacy Exclusion"). The second provision excludes coverage for personal and advertising injury arising from the alleged violation of a statute that limits the communication or distribution of material or information, such as the DPPA (the "Communication Exclusion"). Because an alleged violation of the DPPA falls squarely within the plain language of both of these exclusions, and because the only claim asserted in the Underlying Action is based on the DPPA, Hartford has no duty to defend Gelshenen in the Underlying Action. See Hartford Cas. Ins. Co. v. Greve, No. 3:17-CV-183, 2017 WL 5557669 (W.D.N.C. Nov. 17, 2017) (finding that the underlying DPPA actions fell squarely within both policy exclusions, granting Hartford's Fed. R. Civ. P. 12(c) motion for judgment on

---

[1] Hartford has attached the Amended Complaint in the Underlying Action (the "Underlying Comlaint") to its Complaint. See Pl.'s Compl. Ex. A (#1-1).
[2] Hartford issued the Policies for the following policy periods: 6/1/2011 to 6/1/2012, 6/1/2012 to 6/1/2013, 6/1/2013 to 6/1/2014, 6/1/2014 to 6/1/2015, 6/1/2015 to 6/1/2016, and 6/1/2016 to 6/1/2017. See generally Pl.'s Reply (#38) at Exs. 1–6 (showing certified copies of the Policies).

the pleadings, and entering a declaratory judgment in favor of Hartford), aff'd, 742 F. App'x 738, 741 (4th Cir. 2018).

## II. Standard for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept the non-movant's factual statements as true and draw all reasonable inferences in his favor. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004); Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley, 329 F. Supp. 2d at 622. The standard is similar to that used in ruling on a Rule 12(b)(6) motion, "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." Continental Cleaning Serv. v. United Parcel Serv., Inc., 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted).

In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. Bradley, 329 F. Supp. 2d at 622 (noting the court should consider documents attached to the pleadings); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (holding the court should consider pleadings and judicially noticed facts). Where an instrument is "integral to and explicitly relied upon in the complaint," the instrument itself should be considered along with the factual allegations of the complaint and answer. Colin v. Marconi Commerce Sys. Emps.' Retirement Plan, 335 F. Supp. 2d 590, 596

(M.D.N.C. 2004) (insurance policy at issue).

**III. Discussion**

    **A. Insurer's Duty to Defend**

Under North Carolina law, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings.... When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 (1986); see also Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Investments, LLC, 2012 WL 4191383, at *5 (E.D.N.C. Sept. 19, 2012) ("An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy."). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." Waste Mgmt., 315 N.C. at 691.

To decide an insurer's duty to defend, North Carolina courts apply the "comparison test." Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 6–7 (2010) ("[E]ven a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy."). Applying the comparison test, the court must read the policies and the underlying pleading side-by-side to determine whether the events as alleged are covered or excluded by the policy terms. Atain Specialty Ins. Co. v. Luxury Auctions Mktg., Inc., No. 3:17-CV-368, 2017 WL 6503648, at *2 (W.D.N.C. Dec. 19, 2017) (quoting Kubit v. MAG Mut. Ins. Co., 210 N.C. App. 273, 278 (2011)). The court's analysis of the facts are limited to those alleged in the underlying pleading, not any and every version of the

facts. Penn. Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc., No. 3:11-CV-150, 2012 WL 3962747, at *2 (W.D.N.C. Sept. 11, 2012).

An insurer's duty to defend is not, however, limited to the allegations in the underlying complaint. The insurer has a "duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources." Waste Mgmt., 315 N.C. at 692 (indicating such duty is based on the modern acceptance of notice pleading and of the plasticity of pleadings in general). Thus, where the insurer knows or reasonably could discover facts outside the pleadings that would cover a claim under the policy, these facts may trigger the duty to defend. Sharpe Images, 2012 WL 3962747, at *2 (citing Waste Mgmt., 315 N.C. at 693). If the insurer fails to defend the insured but it is later established that the policy covers a particular claim, then the insurer must pay the cost of the insured's defense. Lozada v. Phoenix Ins. Co., 237 F. Supp. 2d 664, 670 (M.D.N.C. 2003).

When a dispute arises regarding the duty to defend, the insured must initially show that the asserted facts arguably fall within the policy's coverage. Sharpe Images, 2012 WL 3962747, at *2 (citing Wm. C. Vick Co. v. Penn. Nat. Mut. Cas. Ins. Co., 52 F. Supp. 2d 569, 592 (E.D.N.C. 1999)); see also Waste Mgmt., 315 N.C. at 693 ("Any doubt as to coverage is to be resolved in favor of the insured."). An insurer has a duty to defend where some of the allegations fall within the policy's coverage even if others do not. Sharpe Images, 2012 WL 3962747, at *2. "If the insured meets this burden, then the insurer must show that the policy precludes coverage based on an exclusion. Exclusionary clauses are interpreted narrowly while coverage policies are interpreted broadly to provide the greatest possible protection to the insured." Id. (citations omitted). Once an insurer establishes that an exclusion precludes coverage, the burden shifts to the policyholder

to show that an exception to the exclusion exists and applies to restore coverage. See Home Indem. Co. v. Hoechst Celanese Corp., 494 S.E.2d 774, 783 (N.C. Ct. App. 1998); see also Greve, 2017 WL 5557669, at *4 (finding Greve did not meet his burden to show that the exception applied because Underlying Action could not support a common law claim for invasion of privacy).

The Court notes that the meaning of language used in an insurance policy is a question of law for the court. See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970). "[I]f the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written." N.C Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532 (2000).

### B. Hartford Has No Duty to Defend Gelshenen

Gelshenen argues Hartford's Motion for Judgment on the Pleadings should be denied for four reasons. As stated below, the Court rejects Gelshenen's arguments and finds that Hartford has no duty to defend Gelshenen under the Policies. The Court will, therefore, grant Hartford's motion.

#### 1. Authenticity of the Policies

Gelshenen first challenges the authenticity of the Policies included with Hartford's opening memorandum. He contends Hartford's motion is premature because "Gelshenen has not yet had the opportunity to obtain certified and authentic copies of the full insurance policies that are the basis for Hartford's lawsuit." Def.'s Mem. Opp. Mot. (#37) at 6. The basis for this dispute is unclear, however, as Gelshenen "does not suggest that the Policies actually contain any terms different from those in the exhibits." Pl.'s Reply (#3) at 2. In any event, the authenticity of the

documents is no longer an issue because Hartford reattached the Policies with certification pages to its Reply. See Pl.'s Reply (#38) at 3 & Exs. 1–6.

### 2. Policies Beyond June 1, 2017

Gelshenen argues the motion is not ripe because "Gelshenen has not yet received certified (or non-certified) copies of Hartford's policies issued to Gelshenen for policy periods June 1, 2017 through June 1, 2018 and June 1, 2018 through June 1, 2019." Def.'s Mem. Opp. Mot. (#37) at 7. Gelshenen contends that, because the Underlying Action has not yet concluded, "neither Gelshenen nor the Court can determine if there is indemnity coverage or a duty to defend based upon policies issued for the past two years." Id. (indicating the Underlying Complaint in Hatch seeks a class certification for all individuals that Gelshenen sent a mailing with the words "This is an advertisement for legal services" printed on the outside of the envelope within the 4 years preceding the filing of this action through the conclusion of this action).

Hartford's failure to attach policies beyond June 2017, if any exist, will not delay the Court from ruling on its motion. The Court's role is to look at the Underlying Complaint and the Policies side-by-side to determine whether there is coverage. As explained below, the events alleged in the Hatch action are excluded under the Polices referenced in the pleadings. If Gelshenen contends that there are policies that exist beyond June 2017, and that such policies render Hartford's motion not yet ripe for determination, then Gelshenen should have submitted some proof of their existence. At this point, the Court has only Gelshenen's vague reference to other policies that may exist, with no explanation as to why Gelshenen does not have copies of his own insurance policies or what efforts he has made to obtain them. Hartford has met its own burden in proving that the events in the Underlying Action are excluded under the Policies, and Gelshenen has offered no

evidence to suggest that the Underlying Action could give rise to even "a mere possibility" that Gelshenen's potential liability is covered by any insurance policy issued by Hartford. See Home Indem. Co. v. Hoechst Celanese Corp., 494 S.E.2d 774, 783 (N.C. Ct. App. 1998) (explaining that, once the insurer has proven an exclusion applies, "the burden shifts to the policyholder to show that an exception to the exclusion exists and applies to restore coverage"). As such, Gelshenen's "vague reference to other policies that might exist beyond June 1, 2017" will not delay disposition of Hartford's motion because, "[e]ven if those policies exist, they are not the subject of the operative pleadings and necessarily do not create a reason to delay a request for judgment on the pleadings." Id.; see also Compl. (#1) ¶¶ 20, 73 (listing policy periods, with the final period ending on June 1, 2017, and seeking declaratory judgment that Hartford has no duty to indemnify Gelshenen under these policies).

The Court further notes that Hartford is aware of its duty to discover facts outside the pleadings that would cover a claim under the policy. See Waste Mgmt., 315 N.C. at 340. Hartford is also aware that, if it is later determined that a policy issued by Hartford does cover a particular claim, then Hartford will have to pay the cost of the insured's entire defense. See Lozada, 237 F. Supp. 2d at 670. Given that there is no evidence so support Gelshenen's contentions, that there is ample evidence to support Hartford's position, and that Gelshenen will be protected in the event that coverage is later established, the Court will not delay ruling on Hartford's motion.

### 3. Exception to the Privacy Exclusion

Gelshenen argues that the exception to the Privacy Exclusion applies because the plaintiffs in the Underlying Action could potentially state a claim for invasion of privacy under North Carolina common law. Gelshenen does not dispute that the Underlying Action alleges an injury

that arises out of the violation of a privacy right created by federal statute and falls within the scope of the Privacy Exclusion. It merely argues that the exception to the Privacy Exclusion applies. However, the Fourth Circuit has already rejected this argument under almost identical circumstances.

Hartford has established that the claim asserted in the Underlying Action falls squarely within the plain language of both exclusions. See generally Greve, 2017 WL 5557669. Once an insurer establishes that an exclusion precludes coverage, the burden shifts to the policyholder to show that an exception to the exclusion exists and applies to restore coverage. See Home Indem. Co. v. Hoechst Celanese Corp., 494 S.E.2d 774, 783 (N.C. Ct. App. 1998). Under the terms of the Privacy Exclusion, coverage is not excluded where the factual allegations in the Underlying Action could potentially give rise to common law damages for a violation of privacy claim. Gleshenen argues the facts alleged in the underlying complaint trigger the exception to the exclusion.

Hartford asks the Court to follow Hartford Cas. Ins. Co. v. Greve, a district court opinion from this district affirmed by the Court of Appeals for the Fourth Circuit. See 2017 WL 5557669, aff'd sub nom., 742 Fed. Appx. 738. In that virtually identical case, defendant Greve tendered defense of the same Underlying Action to Hartford. Hartford refused based on the same two statutory exclusions[3] contained in the Policies here. In granting Hartford's motion for judgment on the pleadings, the district court in Greve found that the alleged violations of the DPPA asserted in the Underlying Action fell directly within the scope of both exclusions. The Fourth Circuit

---

[3] The policies at issue in Greve contained the same provisions excluding coverage for personal and advertising injuries arising out of the alleged violation of (1) a right of privacy created by a federal statute, and (2) a statute that limits the communication or distribution of material or information. See Greve, 2017 WL 5557669, at *2.

agreed that the DPPA claim fell directly within the scope of Privacy Exclusion and, therefore, stated that it need not address whether the claim would also be excluded under the Communication Exclusion.[4] As such, the Privacy Exclusion defeated coverage under the plain language of the policy.[5] The Fourth Circuit further explained that the exception to the exclusion did not apply because facts alleged in the Underlying Action "could not state a claim for either type" of privacy tort recognized by North Carolina law. Here, Gelshenen's Policies are essentially identical to those in Greve, which was decided based on the same Underlying Action. Gelshenen has given no reason why it is any different than Greve, or why the Court should depart from clear Fourth Circuit guidance.

Like Greve, Gelshenen argues that the allegations of the Underlying Action state a claim for an invasion of privacy tort recognized by North Carolina common law. As Hartford explained in its opening memorandum and reply, however, the Underlying Action does not attempt to assert a common law claim, and the facts alleged do not support a common law privacy claim. See Pl.'s Mem. (#36) at 12; Pl.'s Reply (#38) at 4; see also Greve, 742 F. App'x at 741 (discussing the two types of invasion-of-privacy torts recognized in North Carolina and explaining why the facts

---

[4] The district court also found that the alleged violations of the DPPA asserted in the Underlying Action fall directly within the scope of the Communication Exclusion. Greve, 2017 WL 5557669, at *4 ("A plain language construction of this exclusion reveals that there is no coverage under the Policies when personal or advertising injury arises from the alleged violation a statute that limits the communication or distribution of material or information. Alleged violations of the DPPA come directly within this scope."). However, "[b]ecause "the privacy exclusion clearly bars coverage," the Fourth Circuit stated it "need not decide whether the communications exclusion also applies." Greve, 742 F. App'x at 741.

[5] The District of Utah also recently relied upon one the policy exclusions at issue in this case to find that Hartford owed no duty of defense or indemnification against a single count lawsuit based on the DPPA. Hartford Cas. Ins. v. Swapp Law, PLLC, 358 F. Supp. 3d 1210, 1218 (D. Utah 2018).

asserted in the Underlying Action could not possibly support a claim for either type). The Court finds that Gelshenen's argument that the exception to the Privacy Exclusion applies is without merit.

### 4. Applicability of Communication Exclusion

Finally, as a separate and independent matter, Gelshenen argues that, because some of his actions did not involve the sending, transmitting, communication or distribution of material, the Communication Exclusion is inapplicable. It contends that there are both potentially covered and non-covered claims included in the allegations and, therefore, all claims must be defended. Def.'s Mem. Opp. Mot. (#37) at 12 (citing Waste Mgmt., 315 N.C. at 691 n.2). However, "[a] plain language construction of this exclusion reveals that there is no coverage under the Policies when personal or advertising injury arises from the alleged violation a statute that limits the communication or distribution of material or information." Greve, 2017 WL 5557669, at *4. And the language of the DPPA statute clearly "creates a limitation on the distribution of certain information." Id. Put otherwise, because all damages or injuries alleged in the Underlying Action arise "directly or indirectly" out of Gelshenen's alleged violation of the DPPA, the Communication Exclusion eliminates coverage "regardless of whether the particular violations at issue constitute improper communication or distribution of information." Pl.'s Reply (#38) at 6.

Again, Gelshenen does not attempt to distinguish this case from Greve or offer any argument why this Court should construe the policy contract differently. Id. at 1. The Court will, therefore, remain consistent with its prior holding in Greve and finds that the Policy excludes coverage of the Underlying Action under both exclusions.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (#36) is **GRANTED**, and this action is dismissed.

Signed: May 6, 2019

Max O. Cogburn Jr.
United States District Judge